# IN THE SUPREME COURT, STATE OF WYOMING

## 2023 WY 115

OCTOBER TERM, A.D. 2023

December 5, 2023

IN THE MATTER OF THE TERMINATION
OF PARENTAL RIGHTS TO: JJD, minor
child,

DOMINIQUE DESIREE SCIACCA,

Appellant
(Respondent),

v.

S-23-0076

STATE OF WYOMING, ex rel.
DEPARTMENT OF FAMILY SERVICES,

Appellee
(Petitioner).

*Appeal from the District Court of Goshen County*
*The Honorable Edward A. Buchanan, Judge*

*Representing Appellant:*
> Timothy C. Cotton, Timothy C. Cotton, PC, Casper, Wyoming.

*Representing Appellee:*
> Bridget Hill, Attorney General; Christina F. McCabe, Deputy Attorney General.

**Office of the Guardian ad Litem:**
> Joseph Belcher, Director; Kimberly Skoutary Johnson, Chief Trial and Appellate
> Counsel; Samuel Mellema, 2023 Summer Extern, Wyoming Office of the Guardian
> ad Litem.

*Before FOX, C.J., KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice.**

[¶1]    The district court entered an order granting the Department of Family Services' (the Department) petition to terminate Dominique Desiree Sciacca's (Mother) parental rights to JDD (child) under Wyo. Stat. Ann. § 14-2-309(a)(iii) and (v) (2023).[1]  Mother does not challenge the grounds for terminating her parental rights; rather, Mother argues the district court violated her right to due process when it proceeded with the termination hearing while Mother was physically absent from the courtroom but permitted to attend by phone.  She also argues the court violated W.R.C.P. 43(a) when it permitted her to testify by phone from the same location as Father without taking appropriate safeguards to protect her from Father's influence.  Finding no plain error, we affirm.

## *ISSUES*

[¶2]    Mother raises a single issue, which we rephrase as two:

> I.    Whether the district court committed plain error when it proceeded with the termination hearing and permitted Mother to attend by phone.
>
> II.   Whether the district court committed plain error under W.R.C.P. 43(a) when it permitted Mother to testify by phone from the same location as Father.

## *FACTS*

[¶3]    JDD was born in April 2019.  In October, law enforcement officers received a report of domestic battery at a residence in Torrington.  When the officers arrived, Mother, Father, and Mother's parents (grandparents) were arguing while the child was sitting unsupervised in a dangerous position in an unsecured car seat on a sofa.  The officers established a safety plan with Mother and requested she and her child return to the grandparents' home in Centennial.  Mother complied.  Soon after, Mother began to argue with the grandparents about returning to Torrington with the child, resulting in law enforcement officers being called and eventually transporting Mother and the child to Laramie.  The officers took the child into protective custody out of fear for the child's well-being after being exposed to domestic violence and Mother's refusal to comply with the safety plan.  The child was then placed in the Department's custody.

[¶4]    The State promptly filed a neglect petition.  The child was placed in relative foster care with the grandparents and has remained in their care since that time.  After an

---

[1] The district court also terminated Bryan Lee Dycus's (Father) parental rights to the child.  Father did not appeal.

1

evidentiary hearing, Mother was found to have neglected the child. The Department developed a case plan with Mother to help her achieve reunification. However, after Mother repeatedly failed to comply with the case plan, the permanency goal was changed to adoption with the concurrent goal of reunification.

[¶5]   In September 2021, the Department filed its petition to terminate Mother's and Father's parental rights under Wyo. Stat. Ann. § 14-2-309(a)(iii) and (v). In June 2022, two weeks prior to the termination hearing, Father requested court-appointed counsel. The district court held a hearing on Father's request at which Mother appeared and also requested counsel. The court appointed separate counsel for each parent and moved the hearing date to July. Father later requested to continue the hearing, and the court reset it to October.

[¶6]   At the start of the October termination hearing, the district court noted Mother and Father were absent. The court asked Mother's counsel where his client was located. Counsel informed the court that Mother and Father remained in Laramie. Neither owned a car or were able to obtain transportation. Mother's counsel reported to the court that Mother had called him, "wondered about a continuance" and "wondered about being able to call in." Counsel advised Mother to call in. Both parents called into Microsoft Teams from one location. Pertinent to this appeal, the court asked Mother whether she was willing to participate by phone and did not discuss a continuance. Mother agreed she could participate by phone and the court stated her request was granted. The court noted the timeline of the case involved multiple continuances and reset hearing dates. It then reasoned the case had been pending for over a year, the parties clearly knew the date set for the hearing, and the need to establish finality for everyone involved justified proceeding with Mother participating by phone. Mother's counsel affirmed he was ready to proceed and raised no objections.

[¶7]   The termination hearing lasted one day. The Department called three witnesses—Mother, Father, and the DFS caseworker—and the court admitted twenty-four of the Department's exhibits. Mother also testified during her case-in-chief and presented no exhibits. The court later entered a written order concluding it found by clear and convincing evidence Mother had neglected the child, the Department had made reasonable but unsuccessful efforts to rehabilitate the family, and the child's health and safety would be jeopardized by remaining with or returning to Mother under Wyo. Stat. Ann. § 14-2-309(a)(iii). The court also concluded the child had been in foster care for fifteen of the most recent twenty-two months and that Mother was unfit to have custody and control of the child under Wyo. Stat. Ann. § 14-2-309(a)(v). In a separate order, the court found it was in the best interests of the child to terminate Mother's parental rights.

[¶8]   Mother timely appealed.

## STANDARD OF REVIEW

[¶9]    Mother contends our standard of review should be for an abuse of discretion.  At trial, Mother's counsel informed the court that Mother had wondered about a continuance or appearing by phone but did not move to continue the termination hearing.  Mother concedes no motion to continue was formally raised and she did not object when the court permitted her to attend and testify at the hearing by phone.  Under these circumstances, we review the record for plain error.  *In re AGS*, 2014 WY 143, ¶¶33–34, 337 P.3d 470, 480 (Wyo. 2014) (stating issues raised for the first time on appeal in termination of parental rights cases are reviewed under the plain error standard).

[¶10]  In our review for plain error, Mother has the burden to show: "1) the record is clear about the incident alleged as error; 2) there was a transgression of a clear and unequivocal rule of law; and 3) [she] was denied a substantial right resulting in material prejudice."  *In re RR*, 2021 WY 85, ¶ 76, 492 P.3d 246, 266 (Wyo. 2021) (quoting *In re AA*, 2021 WY 18, ¶ 14, 479 P.3d 1252, 1257 (Wyo. 2021)).  The record is clear Mother did not receive a continuance and was present at the termination hearing by phone.  The question is whether Mother has shown the district court transgressed a clear and unequivocal rule of law.

## DISCUSSION

### I.    *The district court did not violate Mother's right to due process when it proceeded with the termination hearing and allowed her to appear by phone.*

[¶11]  No rule required Mother's physical presence at the termination hearing.  *See In re ECH*, 2018 WY 83, ¶ 46 n.7, 423 P.3d 295, 308 n.7 (Wyo. 2018).  The district court instead had discretion whether to continue the termination hearing, and its decision to proceed is not erroneous unless it was "so arbitrary as to deny [Mother] due process[.]"  *Engebretsen v. Engebretsen*, 2022 WY 164, ¶ 18, 522 P.3d 156, 161 (Wyo. 2022) (citation omitted); *see also* U.S. Const. amend XIV; *see also* Wyo. Const. art. 1 § 6.  Whether Mother was afforded due process is a question of law we review de novo.  *In re TJH*, 2021 WY 56, ¶ 10, 485 P.3d 408, 412 (Wyo. 2021) (citation omitted).  What process is due varies depending upon "the nature of the proceeding and the interests involved."  *Id.* (quoting *KC v. State*, 2015 WY 73, ¶ 32, 351 P.3d 236, 245 (Wyo. 2015)); *see also ECH*, 2018 WY 83, ¶ 46, 423 P.3d at 308 ("Due process 'is not a technical conception with a fixed content unrelated to time, place and circumstances. . . . [It] is flexible and calls for such procedural protections as the particular situation demands.'" (citation omitted)).  We have stated "[t]he party claiming an infringement of [her] right to due process has the burden of demonstrating both that [she] has a protected interest and that such interest has been affected in an impermissible way."  *ECH*, 2018 WY 83, ¶ 43, 423 P.3d at 307 (citation omitted).

3

[¶12] We recognize Mother has fundamental rights to familial association and the care, custody, and control of her child. *AA*, 2021 WY 18, ¶ 11, 479 P.3d at 1256 (citations omitted); *see also* Wyo. Stat. Ann. § 14-2-206(a) ("The liberty of a parent to the care, custody and control of their child is a fundamental right that resides first in the parent."). In looking to whether the district court impermissibly interfered with those rights, we consider whether, by failing to continue the termination hearing due to Mother's physical absence, Mother was denied a meaningful opportunity to be heard. *TJH*, 2021 WY 56, ¶ 10, 485 P.3d at 412 (citations omitted).

[¶13] We have considered this issue under similar circumstances. *ECH*, 2018 WY 83, ¶ 46, 423 P.3d at 308–09; *TJH*, 2021 WY 56, ¶¶ 14–22, 485 P.3d at 413–416. In *ECH*, the father was unable to physically attend a permanency hearing because he was incarcerated. 2018 WY 83, ¶¶ 18–19, 423 P.3d at 301. The district court permitted him to appear by phone while his counsel represented him in person. *Id.* On appeal, we considered case law addressing termination hearings and found the majority of states held an incarcerated parent's right to be present is at the discretion of the trial court and such discretion is guided by two key components: "representation by counsel and the opportunity to appear [in some form.]" *Id.*, 2018 WY 83, ¶ 46, 423 P.3d at 308 (quoting *In re C.G.*, 954 N.E.2d 910, 921 (Ind. 2011)). We concluded the father had been given a meaningful opportunity to be heard because his appearance by phone and his counsel's in-person presence allowed him to exercise his rights to "put the State to its proof, to be present, to confront and cross-examine witnesses, to call witnesses, and to present a case in support of [a] continued plan of reunification or dismissal of the case." *Id.* (quoting *In re DT*, 2017 WY 36, ¶ 28, 391 P.3d at 1145). In *TJH*, we acknowledged our reasoning in *ECH* and held a parent was afforded a meaningful opportunity to be heard at a termination hearing when the entire hearing was held through videoconferencing. *TJH*, 2021 WY 56, ¶¶ 14–22, 485 P.3d at 413–16.

[¶14] Here we are considering a termination hearing rather than a permanency hearing, and Mother's absence was of her own making rather than the result of incarceration. However, we conclude these distinctions present no meaningful difference in determining whether Mother was given a meaningful opportunity to be heard because, as in *TJH*, the application of the *Mathews v. Eldridge*, 424 U.S. 319, 334–35, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) factor test similarly establishes that Mother's appearance by phone comported with due process. *See TJH*, 2021 WY 56, ¶¶16–22, 485 P.3d at 413–416 (stating the *Mathews* test "determin[es] whether a particular procedure violates the litigant's due process rights" (citation omitted)); *see also Lassiter v. Dep't of Social Servs. of Durham Cnty.*, 452 U.S. 18, 27, 101 S. Ct. 2153, 68 L.Ed.2d 640 (1981). In applying this test we consider: "the private interests at stake, the government's interest, and the risk that the procedure[] used will lead to [an] erroneous decision." *TJH*, 2021 WY 56, ¶ 16, 485 P.3d at 414 (citations omitted).

[¶15] As stated above, Mother's relationship with her child "is fundamental in nature" and the "termination of that relationship works 'a unique kind of deprivation.'" *In re CC*, 2004

4

WY 167, ¶ 18, 102 P.3d 890, 865 (Wyo. 2004) (citation omitted). The government on the other hand has "an urgent interest in the welfare of the child, [and, therefore,] shares the parent's interest in an accurate and just decision." *TJH*, 2021 WY 56, ¶ 20, 485 P.3d at 415 (quoting *CC*, 2004 WY 167, ¶ 18, 102 P.3d at 865). Importantly, the child has a significant interest in stability and permanency along with a significant interest in the timeliness of a decision. *See id.* at ¶¶ 17, 21, 485 P.3d at 414, 415 (citations omitted). We have often stated "[w]hen the rights of a parent and the rights of a child are on a collision course, the rights of the parent must yield." *ALRW*, 2023 WY 20, ¶ 36, 525 P.3d at 634 (citation omitted).

[¶16]  Mother asserts in conclusory fashion that the risk is great that her appearance by phone led to an erroneous decision. We find no such risk. When Mother failed to arrange for timely transportation to the hearing, the district court permitted Mother to appear by phone while her counsel appeared in person. During the hearing, Mother exercised her rights to "put the State to its proof, to be present, to confront and cross-examine witnesses, and to call witnesses[.]" *ECH*, 2018 WY 83, ¶ 46, 423 P.3d at 308–09 (citation omitted). Mother's counsel cross-examined her and Father, called her to testify in her case-in-chief, and presented argument to the court. Mother fails to identify any risk taken by allowing her telephonic participation or any particular error in the court's termination decision. Therefore, considering all interests involved, Mother was not denied a meaningful opportunity to be heard and the court did not violate her right to due process when it proceeded with the termination hearing while she appeared by phone. *See id.*, 423 P.3d at 308 ("By permitting Father to appear by telephone while Father's counsel was present in the courtroom, the juvenile court afforded Father due process.").

## II.     The district court did not violate W.R.C.P. 43(a) when Mother testified by phone from the same location as Father.

[¶17]  W.R.C.P. 43(a) states that at trial witness testimony "must be taken in open court" unless a rule or statute provides otherwise. It further states "[f]or good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location." *Id.* We have not specifically addressed what constitutes "appropriate safeguards" under Rule 43; however, this rule closely mirrors the federal rule. *Compare* Fed. R. Civ. P. 43(a) *with* W.R.C.P 43(a). We therefore look to federal precedent interpreting the rule as persuasive authority. *See Adams v. State*, 2023 WY 85, ¶ 21, 534 P.3d 469, 476 (Wyo. 2023) (citation omitted); *Rodriguez v. State*, 2019 WY 25, ¶ 31 n.4, 435 P.3d 399, 408 n.4 (Wyo. 2019) ("We consider federal authority interpreting procedural rules highly persuasive when our rules are sufficiently similar or identical." (citation omitted)).

[¶18]  The Tenth Circuit, relying on the advisory committee notes to the federal version of Rule 43, has stated, "[i]n general, safeguards should ensure (i) accurate identification of the witness; (ii) protection against any outside influence on the witness; and (iii) accurate

5

transmission." *Gil-Leyva v. Leslie*, 780 Fed. App'x 580, 588 (10th Cir. 2019) (citing the advisory committee's notes to the 1996 amendment to Rule 43(a)); *see also In re RFC & ResCap Liquidating Tr. Action*, 444 F. Supp. 3d 967, 970–72 (D. Minn. 2020); *VMX-Global USA, LLC v. Noble Env't Tech*, 339 F.R.D. 690, 692 (S.D. Fla. 2021) (citation omitted).

[¶19]  Mother does not assert she was inaccurately identified or the transmission of her testimony was inaccurate.  She generally contends the district court failed to implement safeguards from Father's outside influence when both parents testified by phone from the same location.  Yet, she does not claim that Father exercised any such influence.  The record demonstrates the court repeatedly advised Mother she could not consult Father during her testimony.  The court also did not permit Father to interrupt Mother or provide her with answers.  Mother has not shown these safeguards were inadequate.

[¶20]  Mother further argues the court should at least have sequestered Father during her testimony.  But this safeguard was not available to Mother because Father was a party to the Department's termination petition and could not be sequestered.  *See* W.R.E. 615 (stating "[t]his rule does not authorize exclusion of . . . a party who is a natural person[.]").

## *CONCLUSION*

[¶21]  The district court did not deny Mother a meaningful opportunity to be heard when it proceeded with the termination hearing and allowed her to appear by phone.  It also provided Mother with appropriate safeguards under W.R.C.P. 43 while she testified from the same location as Father.  As such, the court did not transgress any clear and unequivocal rule of law.

[¶22]  Affirmed.